UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| DELANA HONAKER, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-03493-B |
| | § | |
| THERAPY 2000, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Therapy 2000 Inc.'s (Therapy 2000) motion for summary judgment. Doc. 25. For the following reasons, the Court **GRANTS** Defendant's motion.

## I.

## BACKGROUND[1]

This employment-discrimination case arises from Therapy 2000's failure to hire Plaintiff DeLana Honaker. Therapy 2000 is a pediatric therapy provider that employs both occupational therapists (OTs) and occupational therapy assistants (OTAs). Doc. 26, Def.'s Br. in Supp., 2. Honaker is an OT with extensive experience. Doc. 5, First Am. Compl., ¶ 9. Honaker has congenital hearing loss and retinitis pigmentosa, which means she has significant hearing and sight impairments. *Id.* ¶ 8.

The parties' relationship dates to 2014. On January 30, 2014, after attending a Therapy 2000

---

[1] This factual background is drawn from the parties' summary-judgment evidence. The Court will note when facts are in dispute.

-1-

recruiting event, Honaker met Therapy 2000's Amarillo office's director, Crisann Skinner, for lunch. Doc. 26, Def.'s Br. in Supp., 7. According to Therapy 2000, Honaker wanted to provide "continuing education training" to Therapy 2000 and asked Skinner to pass her name on for that reason. *Id.* at 8. Therapy 2000 claims that Honaker did not express interest in applying for an OT position but offered to refer OTs and OTAs to help Skinner staff the Amarillo office. *Id.*

On March 11, 2014, Honaker emailed Skinner her referrals. *Id.* On April 17, Honaker sent Skinner a follow-up email in which she asked, "Are you still thinking that I may have a role with Therapy 2000? We hadn't really talked about that since we had lunch." Doc. 27-1, Ex. A-3, 62, 67–68. Skinner did not respond until May 8. *Id.* at 64. In her response, Skinner asked Honaker to clarify whether the role she sought was providing continuing education training or working as an OT. *Id.* at 68. Skinner noted that she had already hired two OTs and one OTA and suggested the patient load did not justify hiring an additional OT at that time. *Id.* But, Skinner said she would still "be interested in having [Honaker] as an OT." *Id.* On May 12, Honaker responded and claimed she was confused by Skinner's question because Honaker had expressed interest during the January 30 lunch "in doing some part-time work doing evals and supervision and doing workshops." *Id.* at 63. Honaker understood from the January lunch that Therapy 2000 would not need an OT until the summertime and so was surprised that Skinner had already hired two OTs and that Skinner had not passed on Honaker's information. *Id.* She asked Skinner if she was "not being considered for a position due to [her] disability and accommodation." *Id.*

Skinner responded that she did not believe Honaker had "a disability at all . . . ability to succeed [was] more like it." Doc. 28-9, Ex. 9. Skinner explained that she had offered the current OTs their positions before she met Honaker and that she "wanted to see how fast [Therapy 2000]

advanced before [she] looked at additional OTs." *Id.* Skinner concluded that Honaker would "of course" be considered for an OT position but Honaker would need to interview with Skinner and her boss to see if both sides thought the position was "a match." *Id.*

So on December 23, 2015, Honaker applied to Therapy 2000's online posting "for a full-time/part-time/PRN Occupational Therapist in Amarillo." Doc. 26, Def.'s Br. in Supp., 5. On January 5, 2016, Honaker spoke over the phone with Mayra Medina, Therapy 2000's recruiting manager. *Id.* At the end of the call, Medina told Honaker she would arrange an interview with Skinner. Doc. 30, Resp., 8. But on January 15, 2016, Medina emailed Honaker to notify her that "Crisann had been reviewing [Therapy 2000's] current needs and at this time [had] come to the conclusion she just [didn't] have the caseload availability to bring on another OT." Doc. 26, Def.'s Br. in Supp., 6.

Honaker continued to check Therapy 2000's website and noticed that Therapy 2000 did not remove the OT posting. Doc. 5, First. Am. Compl. *Id.* ¶ 12. So on March 2, 2016, Honaker applied for the position again. *Id.* She emailed Medina about her application on March 11 but did not receive a response. *Id.* Thereafter, Honaker filed a disability-discrimination claim with the Texas Workforce Commission and the Equal Employment Opportunity Commission (EEOC). *Id.* ¶ 7. The EEOC issued a notice of right to sue on or about October 6, 2016, *id.*, and Honaker filed suit on December 23, 2016, alleging that Therapy 2000 refused to hire her in violation of the Americans with Disabilities Act (ADA), the Federal Rehabilitation Act of 1973, and Chapter 21 of the Texas Labor Code, *see id.* Therapy 2000 filed a motion for summary judgment on February 20, 2018. Doc. 25. Therapy 2000's motion is ripe for review.

# II.

# LEGAL STANDARD

Courts must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). And a fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). So the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the movant has produced evidence on an element or claim or alleged the non-movant has no evidence, the non-movant must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim" to show that a fact issue exists. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). And although the Court views evidence in the light most favorable to the non-movant when determining whether a genuine issue exists, *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000), mere "metaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not save a non-movant from summary judgment, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam)(internal citations and quotation marks omitted).

# III.

# ANALYSIS

A. *Evidentiary Objections*

Both parties make evidentiary objections. Honaker claims Therapy 2000 cannot rely on her application for the OT position because it is unauthenticated hearsay, Doc. 30, Resp., 12, and Therapy 2000 claims that Honaker makes statements of fact in her response brief that are unsubstantiated by evidence in the record, Doc. 37, Reply, 6. Because the Court can address the issues in Therapy 2000's motion without considering the objected-to evidence, both parties' objections are **OVERRULED** as moot. *See Ennis Transp. Co. v. Richter*, No. 3:08-cv-2206-BH, 2011 WL 3702727, at *2 (N.D. Tex. Aug. 22, 2011). Next, the Court will address Honaker's ADA-discrimination claim.

B. *Honaker's ADA-Discrimination* Claim

Honaker claims that Therapy 2000 violated the ADA by refusing to hire her because of her disability. Doc. 5, First Am. Compl., ¶ 29. Because Honaker did not produce direct evidence of discrimination, her claim is subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). Under *McDonnell Douglas*, a plaintiff must make a prima facie case of discrimination. *Manning*, 332 F.3d at 881. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is pretexutal. *Id.* Because the Court finds that Honaker has not established a prima facie case of discrimination, the Court need not move past the first step in the *McDonnell Douglas* framework.

A plaintiff alleging disability-based discrimination establishes a prima facie case by showing that (1) she is disabled or regarded as disabled within the meaning of the ADA, (2) she is qualified for the position, and (3) she suffered an adverse employment action because of her disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010); *Gowesky v. Singing River Hosp. Servs.*, 321 F.3d 503, 511 (5th Cir. 2003). Therapy 2000 concedes that Honaker is disabled within the meaning of the ADA. Doc. 26, Def.'s Br. in Supp., 14. It argues, though, that Honaker cannot meet the second or third prong of the analysis for the same reason: Therapy 2000 did not hire anyone for the posted OT position because there was no OT position available. *Id.* at 14, 16. Honaker responds that there are genuine issues of material fact about whether Therapy 2000 had an available OT position, which precludes the Court from granting summary judgment. Doc. 30, Resp., 13–15. But the Court declines to address the parties' arguments about whether Therapy 2000 had an available position because even if it did, Honaker fails to show she suffered an adverse employment action because of her disability. Therefore, Honaker fails to meet the third prong of the prima facie analysis.

Honaker argues her 2014 email exchange with Skinner demonstrates that she suffered an adverse employment action because of her disability. Doc. 30, Resp., 15–16. She contends that Skinner found Honaker's question in her May 2014 email about discriminatory hiring practices rude, and Skinner based her employment decision on the rude email. *Id.* Skinner agrees. She states in her deposition that she told Medina she "was not interested in hiring [Honaker] because . . . of the resasons [she] stated, that [Honaker] was rude to [her]. [Skinner] felt like that [Honaker] was inappropriate [and] unprofessional with talking to [her] about another agency." Doc. 28-2, Skinner Dep., 193:1–6. Honaker also argues that Skinner's attempts to cover up the true reason for refusing to hire Honaker evince a discriminatory intent. Doc. 30, Resp., 16. Skinner admits, for example, that

contrary to Skinner's statement in her April 2014 email, Therapy 2000 had not offered anyone an OT position before Skinner met with Honaker in January 2014. Doc. 28-2, Skinner Dep., 196:18–25. And Skinner's email in which she stated, "I am not wanting to interview [Honaker] but we need to tread lightly with her as I don't want any backlash . . . ! am not going to hire her no way . . . but need to figure out best way to handle this I will fill you in," Doc. 30, Resp., 9, indicates the alleged unavailability of an OT position was not the real, or at least not the only, reason Therapy 2000 failed to hire Honaker.

But even if Honaker's evidence demonstrates that she was subject to an adverse employment action, she presents no evidence the adverse employment action was because of her disability. As Honaker points out, Skinner admits she did not want to hire Honaker because she thought Honaker was rude and unprofessional. Indeed, Skinner told Honaker that she did not view her as disabled; instead, Skinner thought Honaker had an ability to succeed. *See* Doc. 28-9, Ex. 9. Thus, Honaker presents no evidence that Therapy 2000 failed to hire her because of her disability. Therefore, she has not established a prima facie case of discrimination and the Court need not move to the second step of the *McDonnell Douglas* framework. For that reason, the Court **GRANTS** Therapy 2000's motion as it relates to Honaker's ADA discrimination claim**.**

C.  *Violations of the Rehabilitation Act and Texas Labor Code*

Although Therapy 2000 moves for summary judgment on all of Honaker's claims, Doc. 25, Mot. for Summ. J. 1, it does not address Honaker's claims for violations of the Federal Rehabilitation Act of 1973 or Chapter 21 of the Texas Labor Code. But the *McDonnell Douglas* framework also applies to employment-discrimination claims brought under the Rehabilitation Act and Chapter 21 of the Texas Labor Code. *See* 29 U.S.C. § 794(d)("The standards used to determine whether

[Section 504 of the Rehabilitation Act] has been violated . . . shall be the standards applied under title I of the Americans with Disabilities Act."); *Westrich-James v. Dall. Morning News*, No. 3:07-cv-1329-G, 2012 WL 4068982, at *3 (N.D. Tex. Sept. 17, 2012)(noting that claims brought under Chapter 21 of the Texas Labor Code are subject to the *McDonnell Douglas* framework). Thus, the Court's determination of Honaker's ADA claim is dispositive of her remaining claims. And because the Court granted summary judgment on Honaker's ADA claim, it **GRANTS** summary judgment on her Rehabilitation Act and Texas Labor Code claims too.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment. Doc. 25.

**SO ORDERED.**

SIGNED: July 10, 2018.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE